By the Court.
Sandford, J.
The fund in controversy, grows out of the charge made upon the interest of Toney, Robert, and Montague, in the remaining undivided lands of R. Robinson, in favor of Edward Shaw. Unless Fountain’s judgment became a lien, upon that charge or interest, the complainants have no right to the fund, whatever may be the fact, in respect to the defendants. Fountain’s lien, if he had any, was acquired by the docketing of his judgment. He has never issued any execution, nor filed a creditor’s bill. The lien of judgments is given by statute, which provides that they “ shall bind, and be a charge upon the lands, tenements, real estate, and chattels real,” of the judgment debtor, which he may have, at the time of docketing the judgment, or at any time afterwards ; and such real estate, and chattels real, shall be subject to be sold upon execution, to be issued upon such judgment. (2 R. J. 359, § 3.)
The question is, therefore, narrowed down to this—Was the right or interest, which Edward Shaw had in the undivided shares of Toney, Robert, and Montague, consequent upon the proceedings in 1830, either land, real estate, or tenement, or a chattel real ? The complainants insist that it was real estate ; the defendants, that it was a mere pecuniary charge upon the land. Let this be tested by the supposition, that, instead of a sale, an actual partition had been ordered in the partition suit commenced in 1837. In what manner could this right or interest have been awarded to E. Shaw? We think manifestly, it could have been awarded only by charging it in equal proportions on the shares, in severalty, of the three parties, by whom it was payable. Taken in connexion with the decree in the chancery suit of 1830, it would, in effect, have been so much awarded to Shaw, for equality of partition, as between him and those three parties. The decree for an actual partition would necessarily declare the rights of the parties substantially, *287 as it was done by the decree made in the partition suit of 1837. It would adjudge Albert, as the grantee of Shaw, to be entitled to one undivided sixth of the lands, and to a charge upon three other undivided sixths of the sum of $3103 03, with interest, &c., and the directions to the commissioners would correspond with this adjudication. Any attempt to declare Albert to be entitled to one sixth of the land, and also to a further undivided interest, in three other sixths, to the extent which the sum of $3103 03, with interest, bore, at the time of the partition, to the value of such other three sixths, and to direct a partition accordingly, would be futile and impracticable. The provision in the decree, which created this interest, made it in terms, a charge upon the remaining lands, and not a legal title in, or to any undivided portion of the lands, and it is plain, no other sensible form could have been adopted.
Again, suppose that an execution had been issued upon Fountain’s judgment, and the sheriff had proceeded, by virtue of it, to sell Shaw’s right, title, and interest, in the lands of his grandfather ? In what manner, and by what description would he sell the right, or interest, in question, and how could the purchaser obtain possession of it, under the sheriff’s deed? It-is sufficient to ask the question, to show its impracticability. The sheriff could sell and convey Shaw’s undivided sixth, but the interest, to the extent of the $3103 03, he could no more sell, than he could'a mortgage of the same amount, on the same three sixths. It was a mere right or equity, resting in action, against the three sixth partsi It was therefore neither lands, tenements, nor real estate, so as to be subject to the lien of a judgment.
• It is made a point by the complainants, that by the conveyance from Shaw to Albert, a trust in equity was created, for the payment of Fountain’s judgment. Also, that if regarded as a sale, Shaw had a lien in equity on ‘ the estate and interest sold, for the payment of the purchase money, of which this judgment was a part, and so much of the purchase money, and such lien for its payment, were thereby transferred in equity, to Fountain.
The answer to the first proposition, assuming that such a trust existed, is, that the conveyance creating it, was set aside as *288 fraudulent and void, as against the defendants in this suit, the creditors of Shaw. Although Fountain were not made a party to the suits in which this was decreed, his interest as a beneficiary of the trust, was thereby effectually cut off; it being sufficient in this state, to make the trustee a party, for the purpose of avoiding an assignment to him, for the benefit of creditors.
As to the lien for the purchase money, Shaw, the vendor, was a party defendant in the suits for setting aside the conveyance ; and even if there were an equity, as between him and Fountain, which would entitle the latter to claim the benefit of such.lien, it was not such an equity that strangers were bound to notice, and in suits by them, Shaw sufficiently represented the entire lien. In truth, this supposed lien in favor of Fountain, through Shaw’s lien for the purchase money, was of no moment, so long as Fountain had a lien at law on the undivided sixth, by virtue of his judgment, and could speedily have acquired a perfect lien in equity, on Shaw’s interest, or charge upon the three sixths, by the issuing and return of an execution, and the filing of a bill in chancery.
It is unnecessary for us to examine the regularity of the defendants’ proceedings, so far as their right to the fund is concerned, because the complainants failing to show any title to it, have no right to impeach those proceedings. In reference to the question of costs, however, which are in our discretion, we can refer to them. We think that the omission of the solicitor for Voorhis, to notify Fountain or the complainants, of the application to the court, and the reference through which the defendants obtained the fund, was quite inexcusable. Voorhis is chargeable with actual notice, by what occurred before the master, on the reference as to liens in the partition suit, that Fountain claimed a lien by his judgment on all of Shaw’s interests in the real estate ; and that the fund in court was paid in as the property of Albert, and not as the property of Shaw, as was in effect stated in the application. If the notice had been given to Fountain, the questions which have been litigated at so much expense in this suit, would have been determined ten years ago, at a trifling cost, upon the reference then ordered before the master. For this reason, although we affirm the decree made in *289 the supreme court, dismissing the bill, we shall give no costs to the defendants.
Decree affirmed,, without costs.